## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| UNITED STATES OF AMERICA, |
| v. |
| JEAN-PAUL GAMARRA, |
| Defendant. |

Criminal Case No. 17-65 (JDB)

## MEMORANDUM OPINION

Before the Court is [11] defendant Jean-Paul Gamarra's motion to dismiss the indictment against him. Gamarra's motion states that he has been committed to the custody of the Bureau of Prisons and hospitalized for a competency evaluation well beyond the initial four-month period authorized by statute. See 18 U.S.C. § 4241(d)(1). The government does not dispute this fact. Instead, it contends that the proper remedy is for the Court to either (1) authorize a second initial four-month evaluation period, see id. § 4241(a); (2) order that Gamarra be detained prior to trial either because he has been charged with a crime of violence, see id. § 3142(f)(1)(A), or because he presents a flight risk, see id. § 3142(f)(2)(A); or (3) authorize an additional period of hospitalization after finding, based on the available medical evidence, that there is a "substantial probability" that Gamarra will become competent within that additional time, see 18 U.S.C. § 4241(d)(2). See Gov't's Opp'n to Def.'s Mot. to Dismiss ("Opp'n") [ECF No. 12] at 14–16. Although the Court agrees with Gamarra that a statutory violation has occurred, it also agrees with the government that dismissal of the indictment is not the proper remedy. Hence, for the reasons explained below, the Court will deny Gamarra's motion to dismiss the indictment.

Gamarra was arrested on March 28, 2017 outside the White House. He had approached United States Secret Service officers with a package that he claimed contained a component to

1

launch a nuclear weapon. See Aff. in Supp. of an App. for a Crim. Compl. ("Demock Aff.") [ECF No. 1-1] ¶ 5. The package contained a Bluetooth keyboard, along with a note stating: "Warning this device is a threat on Senatar and President Life [sic]." Id. ¶ 6. Gamarra told the Secret Service officers that he sought to deliver the keyboard to them so that they could "reverse engineer" the keyboard—which he again claimed was a "nuclear bomb component"—to prevent a bomb-related plot against the President. Id. ¶ 7. He also said that he had no explosives and did not wish any harm to the President. Id. However, the government's review of records indicated that Gamarra had previously walked into a hospital and threatened to kill President Barack Obama. Id. ¶ 8. Government records also showed that Gamarra's mother and prior spouse had both indicated that Gamarra suffered from bipolar disorder and schizophrenia. Id. ¶ 9.

That same day, the government charged Gamarra with threatening the President, 18 U.S.C. § 871, and threatening and conveying false information concerning the use of an explosive, 18 U.S.C. § 844(e). See Compl. [ECF No. 1]. On March 29, Magistrate Judge Meriweather granted the government's motion for an examination of Gamarra's mental competency. See Order [ECF No. 2]. After a status hearing on April 4, 2017, and based upon the results of the competency examination, Magistrate Judge Robinson committed Gamarra to the custody of the Attorney General for thirty days pursuant to 18 U.S.C. § 4247 to determine whether he was mentally competent to stand trial. See Order [ECF No. 5]. After these thirty days expired, the government moved—without objection—to continue the next status hearing regarding Gamarra's competency evaluation to July. See Min. Entry of May 16, 2017. On July 17, 2017, Judge Robinson found that Gamarra was not competent and, upon motion by the government, committed Gamarra to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d) for 120 days to determine whether

2

there was a substantial probability that he would attain the capacity to permit the proceedings to go forward in the foreseeable future. See Order [ECF No. 8].

However, due to a clerical error, Judge Robinson's order was not transferred to the Marshal's Office until late August, and Gamarra was not transferred to FMC Butner in North Carolina until September 19, 2017. See Opp'n at 5; Def.'s Reply [ECF No. 13] at 6–7. The medical staffers at Butner indicated that they would need a full 120 days—until January 16, 2018—to evaluate Gamarra because he "showed an unwillingness to take medication and appeared psychotic." Gov't's Status Rep. [ECF No. 10] at 1–2. On January 30, 2018, the parties jointly moved to continue the status hearing scheduled for that day until March, when they would have had time to examine the report from Butner. See Min. Entry of Jan. 30, 2018. Judge Robinson agreed, and ultimately held the status hearing on March 8, 2018. See Min. Entry of Mar. 8, 2018. There, the government requested a Sell hearing to determine whether Gamarra could be involuntarily medicated; Gamarra, conversely, moved for the first time to dismiss the indictment because he had been held for longer than the 120 days authorized by statute for competency evaluations. Id. This latter motion is now before the Court.

The Insanity Defense Reform Act of 1984 set up a three-step process for evaluating the competency of criminal defendants. First, upon a party's motion, and "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent," a court may order the defendant committed for not longer than thirty days for evaluation. 18 U.S.C. § 4241(a)–(b); see id. § 4247(b). Second, if the court finds by a preponderance of the evidence after the evaluation that the defendant remains mentally incompetent to stand trial, "the court shall commit the defendant to the custody of the Attorney General" for "a reasonable period of time, not to exceed four months" for further examination. Id.

3

§ 4241(d)–(d)(1). Third, after the four-month evaluation period, the court must commit the defendant "for an additional reasonable period of time until his mental condition is so improved that trial may proceed," but only "if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward." Id. § 4241(d)(2). This case has already proceeded through the first two of these steps, but the government has not yet received an order to extend Gamarra's confinement under the third step.

Gamarra argues that his extended detention at Butner violates the Insanity Defense Reform Act. He is correct. The statutory text leaves no room for debate: it authorizes evaluation for a period "not to exceed four months." Id. § 4241(d)(1). Congress set this limit mindful of the Supreme Court's admonition in Jackson v. Indiana, 406 U.S. 715, 738 (1972), that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Nor did Congress set any provision for extending this four-month period, as it did for the initial thirty-day evaluation, which can be extended for up to fifteen more days. See United States v. Magassouba, 544 F.3d 387, 405 (2d Cir. 2008). The only manner by which a defendant can be kept in confinement beyond four months is through a court order finding that he has a substantial probability of attaining competency. Gamarra has remained in Butner for more than six months, without an order committing him "for an additional reasonable period of time." 18 U.S.C. § 4241(d)(2).[1] The government has therefore violated the Act.

---

[1] Gamarra asserts that the Court should count the four-month period allowed for in the Act from the date on which Judge Robinson ordered him to be confined, rather than from the date on which he actually arrived at Butner. See Mot. to Dismiss [ECF No. 11] at 16–17. However, the Act states that the government "shall hospitalize the defendant for treatment . . . for . . . a reasonable period of time, not to exceed four months." 18 U.S.C. § 4241(d)–(d)(1). The clear language of the statute refers to the period of time for which the defendant is actually hospitalized; nowhere does it refer to the date on which a court orders the hospitalization as the date from which that period starts. Therefore, Gamarra's statutory period of confinement began on September 19, 2017, when he was actually hospitalized. See Magassouba, 544 F.3d at 410.

However, the proper remedy for this violation is not to dismiss the indictment, but rather to ensure a speedy evaluation under § 4241(d)(2). "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded," Fed. R. Crim. P. 52(a), and the statutory error here is harmless. If Gamarra had not been confined for evaluation, he likely would have remained in pretrial detention, with the same level of deprivation to his liberty rights. Moreover, nothing in the Act suggests that dismissal is a necessary or proper remedy. The Act itself provides no particular remedy for violating its time limits. See Magassouba, 544 F.3d at 411. It also does not suggest that a court must make a § 4241(d)(2) determination within the four-month confinement period; indeed, to set such a deadline, particularly when the defense needs time to contest a § 4241(d)(2) motion, could itself raise due process concerns. See id. at 406–07.

Nor does the Constitution require dismissal. The Court in Jackson, after finding that a three-year confinement violated due process, did not dismiss the indictment but rather remanded to the lower courts for a determination of the defendant's competency. See 406 U.S. at 738 & n.25, 741. Likewise, in a case with facts similar to this one, the Second Circuit found that mandamus actions to compel evaluation hearings and habeas corpus actions to free illegally confined defendants, rather than dismissal of indictments, are the correct remedies for violating the Act's time limits. See Magassouba, at 411 n.16. Finally, the length of Gamarra's confinement is to some extent due to his own actions in refusing to consistently take his medication, which necessitated a lengthier examination period by Butner staff, and to his counsel's agreement to prior continuances of status hearings. Given these facts, the Court finds that Gamarra's six-and-a-half-month confinement has not affected his substantial rights so as to make dismissal appropriate.

The government's proposed remedies, however, are either not available or not properly directed to the Court at this time. First, the government's contention that the Court could simply

5

order a second initial evaluation under § 4241(a)–(b) is contrary to the statute. The Act clearly sets up the three-step structure outlined above, and continuously refers to a singular initial competency hearing rather than to multiple hearings. 18 U.S.C. § 4241. Neither the government nor the courts can circumvent that process by circling back to another step-one initial examination after engaging in the step-two four-month evaluation.[2] Only a determination under § 4241(d)(2) that a defendant has a substantial probability of attaining competency with a further period of confinement can justify continued detention at a facility at this stage. Second, it is premature to make a dangerousness determination under 18 U.S.C. § 3142(g), as Gamarra is still at Butner rather than in pretrial detention. There is currently a hearing scheduled before Judge Robinson to determine whether Gamarra can be involuntarily medicated under Sell v. United States, 539 U.S. 166 (2003). As the government believes that such medication can render Gamarra competent to stand trial, it can and should move for a finding under § 4241(d)(2), and Judge Robinson can rule on that matter, as well.[3] Should Judge Robinson find that Gamarra must continue to be held at Butner, a § 3142(g) determination will be unnecessary. Third, and for the same reasons, the Court will not make a substantial probability finding under § 4241(d)(2) based on the existing reports.

---

[2] The government cites United States v. Martinez-Haro, 645 F.3d 1228, 1232–33 (10th Cir. 2011), to argue that a court may order multiple examinations under § 4241(a)–(b). But Martinez-Haro dealt with the question of whether, at step one, two examiners could look at a defendant at different times rather than having to conduct a joint examination. See id. at 1232. Thus, while the court did "read the statute to authorize a district court to order a second competency hearing when appropriate," id. at 1233, it did not purport to decide whether a second hearing would be either allowed or appropriate after the step-two four-month evaluation period.

[3] If the government does not move for a § 4241(d)(2) finding, or if Judge Robinson declines to make that finding upon the government's motion, 18 U.S.C. § 4246 may kick in. See 18 U.S.C. § 4241(d) ("If, at the end of the time period specified [under either 4241(d)(1) or (d)(2)], it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248."). Section 4246 allows the Bureau of Prisons to set in motion a process to transfer a defendant to state officials for permanent confinement if the defendant "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a); see id. § 4246(d). It also permits the discharge of such a person upon a finding that "the person has recovered from his mental disease or defect." Id. § 4246(e). Either way, Gamarra would likely not stand trial.

The government should direct its motion to Judge Robinson, once expert reports have been filed. Because of the statutory violation, the <u>Sell</u> hearing—and any hearing to make a § 4241(d)(2) determination—must take place by not later than April 30, 2018.

For the foregoing reasons, the Court will deny Gamarra's motion to dismiss the indictment.

/s/
JOHN D. BATES
United States District Judge

Dated: <u>April 6, 2018</u>