UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

JEAN-PAUL GAMARRA,

Defendant.

Criminal No. 17-65 (JDB)

## MEMORANDUM OPINION

Before the Court is [31] the government's objection to Magistrate Judge Deborah A. Robinson's Report and Recommendation on the government's motion to involuntarily medicate defendant Jean-Paul Gamarra to restore him to competency. The Report and Recommendation denied the government's motion, holding that "treatment" is a statutory prerequisite for involuntary medication and that the government failed to meet that requirement. For the reasons that follow, this Court will set aside the Report and Recommendation.

## BACKGROUND

Gamarra was arrested outside the White House on March 28, 2017, after approaching United States Secret Service Officers with a package that he claimed contained a detonator for a nuclear device. United States v. Gamarra, 308 F. Supp. 3d 230, 231 (D.D.C. 2018). Upon inspection, the package was found to "contain[] a Bluetooth keyboard, along with a note stating: 'Warning this device is a threat on Senatar and President Life [sic].'" Id. (citation omitted). The government arrested and charged Gamarra with threatening the President in violation of 18 U.S.C. § 871 and threatening and conveying false information concerning the use of an explosive device in violation of 18 U.S.C. § 844(e). Id. at 232.

1

On April 3, 2017, Gamarra underwent a preliminary competency screening and was found incompetent. Gov't's Mot. to Medicate Involuntarily Def. to Restore Competency ("Gov't's Mot.") [ECF No. 22] at 3. A grand jury indicted Gamarra on April 4, 2017, on both charges, and the government requested that Gamarra be committed to the custody of the Attorney General for a thirty-day psychological examination to determine whether he was presently suffering from a mental disease or defect that rendered him incompetent. Id.

This further screening followed at the Bureau of Prisons' Medical Correction Center, New York, New York ("MCC New York"). Id. A "Competency to Stand Trial Evaluation," dated June 14, 2017, and prepared by Forensic Psychologist Samantha E. DiMisa, Ph.D., at MCC New York ("Competency Evaluation") concluded that Gamarra currently suffered from a mental disease and advised that Gamarra "does not possess a rational understanding of the proceedings against him" and did not have "capacity to adequately assist legal counsel in his defense or make decisions regarding his legal strategy." Competency Evaluation at 18.

After such a finding, a court may order that the defendant undergo further evaluation pursuant to 18 U.S.C. § 4241(d). That section provides that "[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility" for up to four months to determine whether competency can be restored and for a reasonable period afterwards until his "mental condition is so improved that trial may proceed" or until pending charges are "disposed of according to law." 18 U.S.C. § 4241(d) (emphasis added). Having reviewed the competency evaluation, Magistrate Judge Robinson granted the government's motion to commit Gamarra, and he was transferred to Federal Medical Center Butner ("FMC Butner") for further evaluation. Gamarra, 308 F. Supp. 3d at 232.

Gamarra arrived at FMC Butner in September 2017, underwent a physical examination, and participated in a series of interviews with Forensic Psychologist Evan S. Du Bois, Psy.D., and Psychology Intern Kelsey L. Laxton, who completed a forensic evaluation dated February 5, 2018. See Gov't's Ex. 2 ("Forensic Evaluation") at 1–2.[1] Staff Psychiatrists Bryon Herbel, M.D., and Logan Graddy, M.D., consulted on Gamarra's treatment. Id. at 2. Laxton and Du Bois administered several standardized tests to Gamarra as part of their evaluation, including the Personality Assessment Inventory ("PAI"), Evaluation of Competency to Stand Trial, Revised ("ECST-R"), and the Revised Competency Assessment Instrument ("RCAI"). Id. at 2. Gamarra also voluntarily participated in two meetings of a competency restoration group. Id. at 8.

Clinical Pharmacologist Laura Enman documented Gamarra's condition in a series of clinical encounter notes between October 2017 and March 2018. See Gov't's Ex. 12 ("Clinical Encounter Notes"). In October, Enman prescribed Gamarra quetiapine, an antipsychotic medication, and staff monitored his progress over several weeks. See Oct. 26, 2017, Clinical Encounter Note. Gamarra initially seemed willing to take medication, noting that it "helped him sleep" and reduced the effect of "the electrical waves" that Gamarra believed were affecting his mind. Id. Enman adjusted Gamarra's dosage several times at his request to encourage him to take the medication voluntarily as prescribed. See id. (reducing dosage from 400 to 300 mg due to reported hypersomnia); Mar. 12, 2018, Clinical Encounter Note (increasing dosage from 300 to 400 mg at Gamarra's request); Mar. 20, 2018, Clinical Encounter Note (reducing dosage from 400 to 300 mg at Gamarra's request). However, overall Gamarra exhibited poor compliance with his medication regimen, even though FMC Butner staff repeatedly encouraged him to take his

---

[1] The exhibits cited herein were admitted without objection during proceedings before Magistrate Judge Robinson. See Min. Entry of Apr. 10, 2018 (admitting Gov't's Exs. 10, 10A); Min. Entry of Apr. 13, 2018 (admitting Gov't's Exs. 1–3, 11); Min. Entry of Apr. 20, 2018 (admitting Gov't's Exs. 4, 12).

medication as prescribed, and they (and Gamarra himself) noted improvement when he did so. See e.g., Forensic Evaluation at 6, 14.

Gamarra's poor compliance ultimately "necessitated a lengthier examination period by Butner staff." Gamarra, 308 F. Supp. 3d at 233. In all, Gamarra spent more than six months committed to FMC Butner while staff prepared forensic reports. Id. Du Bois and Laxton ultimately concluded that Gamarra remained "[in]competent to proceed to trial" but that "his competency is likely to be restored with adherence to a medication regimen." Forensic Evaluation at 14. Graddy similarly concluded that administration of antipsychotic medication was medically appropriate, that other interventions were unlikely to be beneficial without medication, and that the benefits of medication would outweigh the risks. Gov't Ex. 11 ("Forensic Addendum and Treatment Plan") at 1, 3.

During a March 8, 2018 hearing, the government requested a hearing to determine whether Gamarra could be involuntarily medicated to restore his competency pursuant to Sell v. United States, 539 U.S. 166 (2003). See Min. Entry of Mar. 8, 2018.[2] In Sell, the Supreme Court outlined four factors that the government must prove by clear and convincing evidence before a defendant may be involuntarily medicated to restore his competency to stand trial. Id. at 180–81; see United States v. Dillon, 738 F.3d 284, 291–92 (D.C. Cir. 2013). At the Sell hearing, which took place on April 13, 18, and 20, 2018, Evan Du Bois, Kelly Laxton, and Logan Graddy testified for the government.[3] On April 30, 2018, the government formally moved to involuntarily medicate

---

[2] Gamarra separately moved to dismiss the indictment because he had been committed at FMC Butner for longer than the 120 days permitted by statute. See Mot. to Dismiss [ECF No. 11]. This Court denied the motion, holding that while Gamarra's extended detention had violated the Insanity Defense Reform Act of 1984, the confinement "has not affected his substantial rights so as to make dismissal appropriate." 308 F. Supp. 3d at 233–34.

[3] See Apr. 13, 2018, Tr. of Sell Hr'g, ("4/13/18 Hr'g Tr.") [ECF No. 18]; Apr. 18, 2018, Tr. of Sell Hr'g, ("4/18/18 Hr'g Tr.") [ECF No. 24]; Apr. 20, 2018, Tr. of Sell Hr'g ("4/20/18 Hr'g Tr.") [ECF No. 21].

Gamarra, arguing that it had met its burden of proof as to each of the four factors outlined in Sell. See Gov't's Mot. at 4–17. Gamarra opposed the motion, arguing that the government had failed to prove each of the Sell factors by clear and convincing evidence. See Def.'s Opp'n to Gov't's Mot. to Forcibly Medicate Def. [ECF No. 25] at 6–18.

On August 24, 2018, Magistrate Judge Robinson filed a Report and Recommendation recommending that the government's motion to involuntarily medicate be denied due to its failure to provide "treatment" under 18 U.S.C. § 4241(d). R. & R. [ECF No. 29] at 8–9. She reasoned "that 'treatment' during a 120-day hospitalization" as described in section 4241(d) "is a necessary predicate to a governmental request for authorization to involuntarily administer antipsychotic medication . . . to restore . . . competency." Id. at 5. The magistrate judge noted that "no court" had ever applied such a standard. Id. However, she concluded that the Supreme Court's admonition in Sell that forced medication should be a "rare" occurrence required holding "that the government, as a factual prerequisite to a Sell motion, must demonstrate that the 'treatment' mandated by the statute has been undertaken, albeit without the intended result." Id. at 6. The magistrate judge explained that she "undertook a comprehensive review of the record herein in search of evidence that Defendant was afforded 'treatment' during his 120-day hospitalization" and found none.[4] Id. at 6–9. In particular, she highlighted that Gamarra's treatment did not include "art therapy, music therapy, or individual therapy" including "talk therapy." See id. at 6–7 (citation omitted). Because the magistrate judge found that the government had failed to provide the

---

[4] On August 3, 2018, Magistrate Judge Robinson conducted a status hearing with the parties and expressed concerns that the record failed to "reflect that any 'treatment' had been rendered to Defendant during the period of his hospitalization for that purpose." R. & R. [ECF No. 29] at 3. The magistrate judge ordered the parties to provide supplemental memoranda indicating where in the hearing transcripts evidence of treatment could be found. Id.

5

requisite "treatment," she denied the government's motion and "omitted any discussion of the four Sell factors."[5] Id. at 9 n.8.

## LEGAL STANDARD

A district court reviews de novo a magistrate judge's report and recommendation and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" or "recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

## DISCUSSION

The Supreme Court in Sell "prescribed a detailed, four-part inquiry for district courts to undertake prior to authorizing involuntary medication to restore defendants to competency." Dillon, 738 F.3d at 290. The first Sell factor requires that a court "find that important governmental interests are at stake." Sell, 539 U.S. at 180. "The [g]overnment's interest in bringing to trial an individual accused of a serious crime is important," but courts "must consider the facts of the individual case," as "[s]pecial circumstances may lessen the importance of that interest." Id. "Second, the court must conclude that involuntary medication will significantly further those concomitant state interests"—in other words, involuntary medication must be "substantially likely to render the defendant competent to stand trial" but also "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense." Id. at 181. "Third, the court must conclude that involuntary medication is necessary to further those interests" and that "any alternative, less intrusive treatments are unlikely

---

[5] However, the magistrate judge noted that, "should the assigned District Judge regard consideration of the four factors as necessary," the lack of treatment, together with this Court's previous finding that Gamarra's extended period of confinement constituted a statutory violation, also would constitute "'special circumstances' weighing against the government's request for authorization for the involuntary administration of antipsychotic medication." R. & R. at 9 n.8.

to achieve substantially the same results." Id.  The fourth and final factor requires courts to find that "administration of the drugs is <u>medically appropriate</u>, i.e., in the patient's best medical interest in light of his medical condition." Id.  The government must prove each factor by clear and convincing evidence because of "the liberty interest at stake in forced-medication cases." Dillon, 738 F.3d at 291–92.

The four-part Sell test is the proper avenue for determining whether involuntary medication is appropriate to restore competency.  An evaluation of the "treatment" provided to a defendant is not one of those four factors and does not serve as an independent prerequisite to the Sell analysis.  The text of § 4241(d) does not present "treatment" as a precondition for involuntary medication; rather, "treatment in a suitable facility" precedes the determination whether a defendant is likely to regain the capacity to permit the criminal proceedings to continue.  In fact, the government's request for involuntary medication is essentially <u>a request to forcibly administer certain treatment</u>—usually antipsychotic medication—so a defendant's competency can be restored and trial may proceed.  Nothing in the Supreme Court's discussion in Sell—or in any other court's consideration, for that matter—supports the imposition of a separate requirement that a particular "treatment" be afforded before the Attorney General may determine (through the assessment of medical experts) a need for, and a court may then order, involuntary medication.  Because the Report and Recommendation did not provide an analysis of the four factors required by Sell, but instead imposed an independent "treatment" requirement, the Court will reject its recommendation.[6]

---

[6] Furthermore, this Court disagrees with the conclusion in the Report and Recommendation that Gamarra did not receive "treatment" during his time at FMC Butner.

The psychologists, psychiatrists, and pharmacologists who met with Gamarra focused primarily on the treatment they determined would be effective: administration of antipsychotic medication.  See Forensic Addendum and Treatment Plan at 1 (Dr. Graddy opining that "[a]ntipsychotic medications are medically appropriate" and that

7

Hence, "treatment" is not an independent statutory prerequisite under § 4241(d) to involuntary medication to restore competency in addition to the four-factor Sell test. Nevertheless, the kind and quality of treatment provided to a defendant may still be relevant to a court's Sell analysis. For example, under the third Sell factor, the court must conclude that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results," and evidence that alternative treatments were tried but failed could serve as strong evidence that involuntary medication is "necessary" under this prong of the analysis. Sell, 539 U.S. at 181. Similarly, if the government failed to provide a defendant with any medically appropriate treatment, it would likely be unable to meet its burden under the fourth factor to prove that a course of involuntary medication was "medically appropriate." See id. And finally, as Magistrate Judge Robinson suggested, see R. & R. at 9 n.8, a defendant may raise any abnormalities in his treatment or conditions of confinement as "special circumstances" that mitigate the government's interest in

---

"[o]ther interventions at this point are unlikely to be beneficial in the situation"); Gov't's Ex. 10 ("FMC Butner Sell Appendix") at 1 (noting that the "mainstay of treatment" for psychotic disorders is "antipsychotic medication"); 4/13/18 Hr'g Tr. 37:15–20 (Laxton noting that Gamarra's diagnosis meant that "medication would likely be necessary to get [Gamarra's] symptoms in control to a point that he would be competent to stand trial"); id. at 143:4–8 (Dr. Graddy stating that he did not recommend other treatment options because he "kn[ew] there are none").

Though Gamarra did not receive individual, art, or music therapy—which the magistrate judge implied would have been appropriate, see R. & R. at 6–7—the record reflects that Gamarra met frequently with FMC Butner staff. See, e.g., 4/13/18 Hr'g Tr. 33:24–34:10 (Laxton noting that she had "13 to 15 formal contacts" with Gamarra in which she "conduct[ed] a clinical interview or asked further questions about his case related to his competency"); id. at 34:14–35:16 (Laxton noting that Du Bois attended 5 to 7 formal meetings with Gamarra in addition to weekly meetings between Laxton and Du Bois in which Gamarra and other patients would be discussed); see also Clinical Encounter Notes (recording meetings between Gamarra and his clinical pharmacologist).

Finally, as for non-pharmacological treatments, Gamarra did attend some meetings of the competency restoration group, which seeks to restore competency through education about legal proceedings in a small group setting. 4/13/18 Hr'g Tr. 41:21–42:23. However, Du Bois noted that Gamarra does not lack a factual understanding of legal proceedings, including basic court processes and concepts; rather, he lacks a rational understanding of legal proceedings due to his "delusional beliefs, which were a result of his schizophrenia." Id. at 64:1–23; 96:1–7. Du Bois and Laxton explained that their attempts to "challenge some of those [delusional] beliefs" had failed, and that they concluded "individual therapy would [not] have been . . . effective." Id. at 95:12–17; see also Forensic Evaluation at 7 ("In many interviews, Mr. Gamarra was perseverative on his delusional persecutory beliefs" including his belief that the present charges against him are the result of blackmail "by the FBI" and others). FMC Butner staff need not order therapeutic interventions that are not medically appropriate in light of a defendant's individualized diagnosis.

This Court will accept the observations and conclusions of the mental health professionals as to the appropriate treatment to be provided to Gamarra while he was at Butner for an assessment pursuant to § 4241(d).

bringing the defendant to trial under the first Sell factor, see Sell, 539 U.S. at 180. Thus, the details of a defendant's treatment are relevant to the Court's analysis to the extent that they weigh in its consideration of the four Sell factors, but not as an independent bar to the government's motion to involuntarily medicate a defendant to restore competency.

## CONCLUSION

For the reasons explained above, the Court sets aside the Report and Recommendation. The Court further orders that a status conference shall promptly take place, as detailed in the Order accompanying this Memorandum Opinion.

/s/

JOHN D. BATES
United States District Judge

Dated: October 12, 2018