**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 17-CR-65 (JDB)** |
| | **:** | |
| **JEAN PAUL GAMARRA,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. Defendant Jean Paul Gamarra's conduct was serious in nature, as demonstrated in the law enforcement response thereto and affirmed by the jury. The government respectfully requests that the Court impose an effective sentence of 47 months, which is in the top third of the applicable Guideline Range, and the maximum period of supervised release (3 years) with all conditions requested in the Presentence Investigation Report.

I.      **BACKGROUND**

On May 27, 2021, Defendant was convicted after a three-day trial of Threats Against the President, 18 U.S.C. § 871, and Threatening and Conveying False Information Concerning the Use of Explosives, 18 U.S.C. § 844(e). The Court is well familiar with the facts of the case, having presided over lengthy pretrial proceedings and the trial in this matter. The government generally agrees with the recitation of facts provided in the Presentence Report, and further asserts that those facts were all proven at trial.

Defendant is currently on release pending sentencing. According to pretrial services, prior to trial in this matter, Defendant served 41 months in prison on the charges.

1

## II.      PRESENTENCE REPORT

The government has reviewed the draft Presentence Investigation Report and generally agrees with the recommendations and findings therein.

Defendant's objection to the draft Presentence Investigation Report is without basis.[1] Specifically, Defendant asserts that the Victim Specific Enhancement (Official Victim) applied under USSG § 3A1.2(b) is inapplicable because the official victim was an element of the offense. This objection misunderstands the nature of the Guidelines format and calculations.

The applicable Guideline provision, USSG § 2A6.1, applies to any crimes involving "Threatening or Harassing Communications; Hoaxes; False Liens." This includes as many as 27 statutory provisions, which have unique elements.[2] The Victim Specific Enhancements, including that for an Official Victim (USSG § 3A1.2(b)), allows § 2A6.1 to be tailored to the specific crime at issue. It is precisely because the underlying offense, 18 U.S.C. § 871, has as an element that the threat was to an official victim (*i.e.*, the President), that application of the Victim Specific Enhancement is required. In fact, the Guidelines specifically note that the Enhancement should apply to charges where the President is the victim. USSG § 3A1.2(b)) App. N. 5 (recommending an "Upward Departure" when the President or Vice President is the victim).  Contrary to his claim, Defendant is not being penalized "twice"—USSG § 2A6.1 on its own does not itself take into account his official victim.

---

[1]      The government takes no position regarding Defendant's personally-drafted responses to the draft Report, which appear to be not clearly articulated or inconsequential.

[2]      This includes 18 U.S.C. §§ 32(c), 35(b), 115(a)& (b), 844(e), 871, 875(c), 876, 877, 878(a), 879, 1038, 1521, 1992(a)(9)&(10), 2280, 2280a, 2281a, 2291, 2292, 2332a, 2332b(a)(2), 2332i, 223(a)(1)(C)-(E), & 46507.

In any event, the objection is irrelevant. Even if the Court agreed with Defendant's argument, the Guidelines range for 18 U.S.C. § 844(e) would then apply as that producing the higher range. The same enhancement for an official victim (USSG § 3A1.2(b)) would apply for 18 U.S.C. § 844(e), as the President was the victim on that crime as well. Thus, the Adjusted Offense Level of 22 is correct.

## III.   RECOMMENDATION

"As a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" for determining the defendant's sentence. *Gall v. United States*, 522 U.S. 38, 49 (2007). While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 552 U.S. 85, 90 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity that courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" *id.* at 574 (quoting *United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). The Supreme Court "accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough,* 552 U.S. at 576 (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)).

Here, given the relevant sentencing factors, a sentence at the top of the Guideline range is appropriate. Specifically, the nature and circumstances of the offense were serious, causing a major disruption in and around the White House complex. 18 U.S.C. § 3353(a)(1). Defendant, given his prior interaction with Federal Bureau of Investigation, knew that his conduct would provoke such

3

a response. *Id.* A Guideline sentence further reflects the seriousness of the offense and promotes respect for the law, and will hopefully deter Defendant or others from engaging in such threats in the future. *Id.* § 3553(a)(2)(A) & (B).

At the same time, the government recognizes that Defendant's conduct was at least in part driven by his mental health issues, which appear to have lessened over the passage of time and with a combination of treatments. 18 U.S.C. § 3553(a)(1). Since his release, Defendant has been reported to be compliant with his pretrial conditions of release, and the Presentence Report writer notes that he is currently in an apparently stable living situation. Continuing on that trajectory is in the best interest of Defendant and the public, as it will aid at protecting against any further crimes by Defendant. *Id.* § 3553(a)(2)(C). The maximum period of supervised release, 3 years, is an appropriate amount of time for the Court to continue to supervise Defendant and for the Court to provide services, as suggested in the Presentence Report, that will assist Defendant.

The government respectfully requests that the Court impose an effective sentence in the top third of the Guideline range (*i.e.*, 47 months), to be followed by the maximum period of supervised release (3 years) and all the conditions of release suggested in the Presentence Investigation Report. The Court can impose the above-request by sentencing Defendant to a period of time served.[3]

---

[3]    If Defendant were sentenced to a period of 47 months' incarceration, he would likely receive 6 months "good time" credit, and thus would be incarcerated for a total of 41 months. Defendant has already been imprisoned for 41 months.

4

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793


 /s/ Karen Seifert
KAREN P. W. SEIFERT
N.Y. Bar No 4742342
Assistant U.S. Attorney
National Security Section
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
karen.seifert@usdoj.gov
(202) 252-7527